IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

CHAD STEFANI,                        *
                                     *
        Plaintiff,                   *
                                     *
        v.                           *
                                     *        1:15-cv-164
CITY OF GROVETOWN, a municipality    *
of the State of Georgia, GARY        *
JONES, individually and in his       *
official capacity, SCOTT             *
WHEATLEY, individually and in his    *
official capacity, CHRISTOPHER       *
POWELL, individually and in his      *
official capacity, and JONES         *
NALLEY, individually and in his      *
official capacity,                   *
                                     *
        Defendants.                  *

---

**O R D E R**

---

Presently before the Court is Defendants' motion to dismiss.
(Doc. 9.) For the reasons below, Defendants' motion to dismiss is
**GRANTED IN PART** and **DENIED IN PART**.

## I.  BACKGROUND

### A. Factual Allegations

For purposes of Defendants' motion to dismiss, the Court
assumes the truth of the following allegations drawn from
Plaintiff's Complaint and its attached exhibits. See Hoefling
v. City of Miami, 811 F.3d 1271, 1277 (11th Cir. 2016) ("A
district court can generally consider exhibits attached to a
complaint in ruling on a motion to dismiss, and if the

allegations of the complaint about a particular exhibit conflict with the contents of the exhibit itself, the exhibit controls.")

### 1. February 17, 2015

On Thursday, February 17, at approximately 7:30 a.m., Plaintiff reported to work at C&B Construction on Washington Road in Evans, Georgia. (Am. Compl., Doc. 20 ¶ 13, Ex. B at 38.) His truck remained at C&B until February 24, 2015. (Id. ¶ 14, Ex. B at 38.) Around 8:00 a.m., Plaintiff left C&B in a white company-owned truck for a job site located at South Old Belair Road. (Id. ¶ 16, Ex. B at 49.) At 12:40 p.m., Plaintiff left the job site in the same white company-owned truck, but, when his co-worker called and asked him to return, Plaintiff returned shortly after 1:00 p.m. (Id. ¶ 17, Ex. B at 40-42, Ex. C at 7.) On his way back, Plaintiff picked up lunch at a Taco Bell on Belair Road in Evans, Georgia. (Id. ¶¶ 75-76.)

Meanwhile, at around 12:49 p.m., Rachel Lucas filed a complaint with the Grovetown Department of Public Safety ("GDPS"). (Id. ¶ 18.) Her complaint alleged "that a white male driving a four door dodge ram truck with no state license tag and a broken windshield, with strawberry-blond hair and a goatee wearing a black hat, blue jacket over a red-and-green plaid shirt approached her while she was getting her children into her own vehicle." (Id. ¶ 18, Ex. B at 4, 17, Ex. D.) According to Ms. Lucas's complaint, this individual asked her whether she'd like to earn extra money. (Id. ¶ 19.) She replied, "sure," and

the man informed her that he wished he had children and that he wanted to spend time with Lucas's children alone. (Id. ¶ 19.) He offered her $200.00 per hour with her children, who were, at that time, eight, six, and three years old. (Id., Ex. D.) After receiving this alarming offer, Lucas immediately left her home for the GDPS where she submitted the incident report mentioned above. (Id. ¶ 20.)

After receiving Lucas's report, Defendant Gary Jones, the Grovetown police chief, created a Facebook post concerning the incident and providing Lucas's description of the suspect. (Id. ¶ 21.) At approximately 2:06 p.m., Defendant Christopher Powell, an officer with the GDPS, purportedly received an allegedly anonymous tip in response to Jones's Facebook post. (Id. ¶¶ 22-23, Ex. B at 5-6, Ex. C at 1, Ex. F.) The tipster reportedly told Powell that Plaintiff owned a truck similar to Lucas's description. (Id. ¶ 22.) Powell informed Defendant Scott Wheatley of the tip. (Id. ¶ 23.) A later investigation by Defendant Jones Nalley, an investigator with GDPS, revealed that no anonymous tip was received by Powell around 2:06 p.m. and that no tip from a female caller was received at any time. (Id. Ex. F.) There was, however, a tip from a male caller received around 3:00 p.m., which simply claimed that Plaintiff was known to flash women. (Id.)

Around 2:00 p.m.,[1] Powell contacted Lucas and instructed her to conduct an online search for Plaintiff Chad Stefani. (Id. ¶ 26.) Plaintiff alleges that Powell directed Lucas to view photos of Plaintiff "[w]ithout any evidence to implicate plaintiff . . . ." (Id. ¶ 44.) Soon after, Lucas called Powell and informed him that her search revealed a picture of Plaintiff that looked identical to the suspect. (Id. ¶ 27.) Plaintiff alleges that Defendants knew "that this method of identification was improper, suggestive, inadmissible, and designed to implicate [P]laintiff." (Id. ¶ 50.) He further alleges that best law-enforcement practices exist which are designed to prevent "tainting a victim's mind prior to showing the victim . . . a photographic lineup." (Id. ¶ 48, Georgia POST training materials, Ex. N.)

Powell notified Wheatley that Lucas made an identification. (Id. ¶ 28.) At 3:25 p.m., Wheatley and an investigator with GDPS called the Columbia County Sheriff's Department Investigative Division and spoke with administrative coordinator Michelle Carter. (Id. ¶ 31.) The officers asked Carter for a mug shot of Plaintiff and any information the County had on him. (Id.) Minutes later, Carter emailed a mug shot of Plaintiff to Wheatley. (Id. ¶ 32.) Soon after, another GDPS member called

---

[1] For clarity's sake, the Court notes that the times alleged in the Complaint appear somewhat nonsensical at first glance. These inconsistent times are actually material to Plaintiff's allegations and are derived from inconsistent timelines in exhibits B, C, and D.

[Carter] on Wheatley's behalf and requested a photo lineup because GDPS's software was not functioning. (Id. ¶ 33.) At 3:30 p.m., Defendant Nalley arrived at GDPS and was assigned as the case agent to investigate Lucas's complaint. (Id. ¶ 29.)

Shortly after Wheatley and Carter's discussion concerning the photo lineup, Jones called Calvin Morris, a member of the Columbia County Sheriff's Department. (Id. ¶ 34.) Jones asked Morris about another incident which may have occurred at the Wal-Mart in Grovetown. (Id.) Jones described the suspect as having strawberry-blond hair and a goatee. (Id. ¶ 35.) Morris informed Jones that the Wal-Mart suspect was described as a Hispanic male and informed Jones that the incidents were unrelated and that the descriptions of the suspects were completely different. (Id. ¶ 36.) After concluding the call with Morris, Jones, apparently unaware that Wheatley already requested a photo lineup, called Carter and requested information on Plaintiff and a photo lineup. (Id. ¶ 37.) A short time later, Jones called Carter and told her that, although Plaintiff had been identified as the suspect, he wanted the photo lineup sent anyway. (Id. ¶ 38.) Jones then called Morris and told him that Lucas had identified Plaintiff as the suspect after receiving Plaintiff's mug shot before GDPS received the photo lineup. (Id. ¶ 39.) Morris told Jones that the physical description Lucas gave in the incident report did not match Plaintiff who "is bald headed with a dark beard."

5

(Id. ¶ 39, Ex. B at 32-33.) Although Lucas had already identified Plaintiff, Jones requested that Morris send him the lineup so that he could show it to Lucas and "make it official." (Id. ¶ 42, Ex. B at 35.) The Columbia County Sheriff's Department's Investigative Division transmitted a photo lineup to GDPS at 4:01 p.m. (Id. ¶ 43.)

After receiving the photo lineup, Defendants instructed Lucas to return to the GDPS building at 4:30 p.m. (Id. ¶¶ 50, 54.) Upon being shown the photo lineup, Lucas immediately identified Plaintiff as the suspect again. (Id. ¶ 54.) Plaintiff alleges that Lucas made this identification "because she had already been shown [his] photo and informed that he was a suspect." (Id.) Around 4:50 p.m., Nalley obtained warrants for Plaintiff's arrest for attempted child molestation in violation of O.C.G.A. § 16-4-1. (Id. ¶ 55, Ex. G.)

At 7:11 p.m., Jones wrote a second Facebook post in which he updated the suspect information and included Plaintiff's mug shot. (Id. ¶ 56.) The post read,

> We have identified a suspect and the complainant has made a positive ID via a photo lineup. Our investigations division has obtained three (3) [f]elony arrest warrants for the suspect for Criminal Intent Child Molestation. The suspect is identified as Chad Eric Stefani . . . . Stefani has not been taken into custody as of yet. The photo attached is a mug shot from Columbia County. We will have Stefani i[n] custody just as soon as we can find him and get our hands on him. His best course of action will be to surrender to the

[GDPS]. We will not rest until he is behind
                bars. Chief Jones.

(Id. ¶ 56, Ex. H.) Upon learning of the warrants, Plaintiff
went to GDPS and was arrested. (Id. ¶ 57.) Plaintiff remained
in confinement without bond from his arrest on February 17, 2015
until April 1, 2015. (Id. ¶ 58.)

### 2. Wednesday, February 18, 2015

The next day, Nalley met with Brian Stefani at C&B. (Id. ¶
61.) They viewed surveillance video of Plaintiff's truck, which
Nalley determined did not leave 4753 Washington Road between the
hours of 8:23 a.m. on February 17th and 5:15 a.m. on the 18th.[2]
(Id. ¶ 60.) Nalley also obtained a search warrant for Britland
Gove's house. (Id. ¶ 67.)

### 3. Thursday, February 19, 2015

On Thursday, February 19th, Nalley spoke with Josh Winyard,
one of Plaintiff's co-workers. (Id. ¶ 80.) He told Nalley that
he could account for Plaintiff's whereabouts until 12:40 p.m. on
February 17th and again shortly after 1:00 p.m. (Id., Ex. C at
8.)

### 4. Friday, February 20, 2015

Plaintiff's fiancée retained counsel on Plaintiff's behalf,
and Plaintiff's counsel engaged private investigator Douglas

---

[2] The Court understands paragraph 60 to allege that the video
showed the truck there until 5:15 a.m. In light of Plaintiff's
previous allegation that the truck remained at C&B until Plaintiff's
release from confinement, presumably additional video tapes would have
shown the truck remained there for weeks.

Parker.  (Id. ¶¶ 73-74.)  Plaintiff's counsel and Parker obtained a copy of the receipt of Plaintiff's lunch purchased at 1:04 p.m. at the Taco Bell on Belair Road in Evans, Georgia on February 17th.  (Id. ¶ 75.)  Parker also viewed a video recording depicting Plaintiff paying for food at 1:04 p.m.  (Id. ¶ 76.)  Plaintiff's counsel mailed this information to Jones and the District Attorney for the Augusta Judicial Circuit at 11:47 a.m. on February 20, 2015.  (Id. ¶ 77.)

### 5. Tuesday, February 24, 2015

Nalley made contact with Britland Gove to execute a search warrant at the Plaintiff's residence.  (Ex. C at 9.)  Nalley did not recover a blue jacket, but collected a multi-color flannel shirt from Plaintiff's closet.  (Id.)

### 6. Wednesday, February 25, 2015

As mentioned previously, on February 25th, Nalley reviewed all recorded phone lines in GDPS's dispatch and found only one recording of an anonymous tip.  (Id. ¶¶ 68-70.)  That recording occurred at 3:03 p.m. on February 17, 2015, and contained a male voice providing Plaintiff's name and describing Plaintiff's history of flashing women.  (Id. ¶ 68.)  The information provided by this "tipster" conflicted with the tip described by Powell.  (Id.)  The purported tip relayed by Powell featured a female tipster who matched Plaintiff's truck to the suspect's. (Compl. Ex. C at 2.)  When confronted by Nalley regarding these discrepancies, Powell explained that he spoke with the male

8

tipster first, then the female. (Id. ¶ 69, Ex. F.) However, Nalley never discovered a recording of the female tip describing Plaintiff's truck, which Powell claimed to receive. (Id. ¶ 70, Ex. F.) Nalley informed Jones of Powell's actions concerning the purported anonymous tip and about Powell's call to Lucas. (Id. ¶ 71, Ex. F.)

### 7. March 31, 2015 – Preliminary Hearing

On March 31, 2015, the Magistrate Court of Columbia County, Georgia held a preliminary hearing in the State's case against Plaintiff. (Id. ¶ 82.) The Magistrate Court determined that the State failed to establish probable cause that Plaintiff took a "substantial step" toward commission of child molestation. (Id. ¶ 83, Ex. B at 51.) Plaintiff was confined from February 17, 2015, until April 1, 2015. (Id. ¶ 58.) Since Plaintiff's release, the actual perpetrator of the offense has been identified. (Id. ¶ 85, Exs. L, M.)

### B. Procedural History

Plaintiff filed his Complaint against Defendants City of Grovetown, Gary Jones, Christopher Powell, and Scott Wheatley, on October 13, 2015. (Doc. 1.) On November 11th, Defendants answered and filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). (Docs. 9, 10). During the course of briefing the motion to dismiss, Plaintiff filed an Amended Complaint (Doc. 14) and, with leave of the Court (Order, Doc. 19), a "Superseding Amended Complaint." (Am. Compl., Doc. 20.)

The Superseding Amended Complaint alleges constitutional violations due to an unlawful arrest and detention, his continued detention, and an unlawful search. (<u>Id.</u> ¶¶ 100-52.) Plaintiff also alleges state-law counts of negligence, false/malicious arrest, false imprisonment, and malicious prosecution. (<u>Id.</u> 153-72.) He seeks compensatory and punitive damages and attorneys' fees and litigation expenses. (<u>Id.</u> ¶¶ 186-97.)

Rather than refile their motion to dismiss, Defendants asserted their motion against the Superseding Amended Complaint. (Defs.' Reply Br., Doc. 21 at 1-2.) Defendants' motion is now ripe for adjudication.

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant fair notice of both the claim and the supporting grounds. <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007). To survive a defendant's Rule 12(b)(6) motion to dismiss, a plaintiff's complaint must include enough "factual allegations to raise a right to relief above the speculative level," and those facts must "state a claim to relief that is plausible on its face." <u>Twombly</u>, 550 U.S. at 570. Although a complaint attacked by a Rule 12(b)(6) motion need not be buttressed by detailed factual

allegations, the plaintiff's pleading obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555. The Rule 8 pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 556 U.S. at 555).

At the same time, a complaint should not be dismissed for failure to state a claim "unless it appears beyond a doubt that the plaintiff can prove no set of circumstances that would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Kabir v. Statebridge Co., No. 1:11-cv-2747, 2011 WL 4500050, at *2 (N.D. Ga. Sept. 27, 2011) (citing Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993)). At this stage, the Court must accept as true all facts alleged in the complaint and construe all reasonable inferences in the light most favorable to the plaintiff. Hoffman-Pugh v. Ramsey, 312 F.3d 1222, 1225 (11th Cir. 2002).

## III.  DISCUSSION

### A. Plaintiff's § 1983 Malicious Prosecution Claim

Plaintiff alleges that Defendants violated his fourth amendment right to be free from unreasonable seizures and his fourteenth amendment due-process rights. Because Plaintiff was arrested pursuant to a warrant, his Complaint is properly

construed as alleging a malicious prosecution claim. Carter v. Gore, 557 F. App'x 904, 906 (11th Cir. 2014). Malicious prosecution is a "violation of the Fourth Amendment and a viable constitutional tort cognizable under § 1983." Wood v. Kesler, 323 F.3d 872, 881 (11th Cir. 2003). "To establish a federal malicious prosecution claim under § 1983, the plaintiff must prove a violation of his Fourth Amendment right to be free from unreasonable *seizures* in addition to the elements of the common law tort of malicious prosecution." Id. "[F]or purposes of a § 1983 malicious prosecution claim, the constituent elements of the common law tort of malicious prosecution include[]: (1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused." Id. "Because lack of probable cause is a required element to prove a § 1983 claim for malicious prosecution in violation of the Constitution, the existence of probable cause defeats the claim." Kjellsen v. Mills, 517 F.3d 1232, 1237 (11th Cir. 2008). "Probable cause exists when the facts and circumstances within the officers' knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed . . . an offense." Miller v. Harget, 458 F.3d 1251, 1259 (11th Cir. 2006) (internal quotations omitted). Additionally, "[p]robable

cause is required to *continue* a prosecution, not just to arrest a defendant or to institute a prosecution." Kjellsen, 517 F.3d at 1238 (citing Wood, 323 F.3d at 882).

The individual Defendants argue that Plaintiff failed to sufficiently plead that they acted without probable cause and with malice and that, in any event, they are protected by qualified immunity because they acted with "arguable probable cause." The Court begins with the individual defendants' qualified-immunity argument.

### 1. Qualified Immunity and Arguable Probable Cause

For qualified immunity to apply, Defendants "need not have actual probable cause, but only 'arguable' probable cause." Brown v. City of Huntsville, Ala., 608 F.3d 724, 734 (11th Cir.2010). "The standard for arguable probable cause is whether a reasonable officer in the same circumstances and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in the light of well-established law." Eubanks v. Gerwen, 40 F.3d 1157, 1160 (11th Cir. 1994). "This standard permits law enforcement officers to make reasonable mistakes with regard to the existence of probable cause without being held personally liable." Bradley v. Tucker, No. 4:14-CV-165, 2015 WL 64944, at *8 (S.D. Ga. Jan. 5, 2015) (citing Von Stein v. Brescher, 904 F.2d 572, 579 (11th Cir. 1990)).

For qualified-immunity purposes, the Court has questions about Defendants' investigatory conduct, including how the Defendants arrived at Plaintiff as the suspect, which Defendants knew of Powell's alleged investigatory conduct, and which Defendants were aware of the exculpatory evidence provided by Plaintiff's counsel. Based on Plaintiff's allegations, the motion-to-dismiss stage is not the appropriate time for resolving those questions. One alleged piece of evidence, which is not in the record, is indicative of the difficulty in determining arguable probable cause during a motion to dismiss. As alleged, Defendants possessed an exculpatory video that clearly depicts Plaintiff purchasing lunch at Taco Bell in a different city, wearing different clothes, and driving a different truck within approximately fifteen minutes of the incident between Lucas and the suspect. It is plausible that, upon watching this video, a reasonable officer could no longer have even arguable probable cause that Plaintiff was the suspect. It is, of course, equally plausible that some deficiency in the video may render it not as exculpatory as Plaintiff alleges. For now, the Court must accept Plaintiff's allegation that Defendants possessed evidence of a clear video that demonstrates the lack of probable cause.[3]

---

[3] The Court emphasizes that other evidence that shows the potential lack of arguable probable cause is alleged to exist. The

Additionally, as mentioned above, the probable cause determination is an ongoing one. Kjellsen, 517 F.3d at 1238. Defendants have argued that the conduct of the District Attorney's office cuts off Defendants' liability. This may be so, but see Carter, 557 F. App'x at 907, but the conduct of the District Attorney's office is not presented on the record before the Court. As it stands, based on the false tip, suspect identification, and two videos containing exculpatory evidence, among other alleged exculpatory evidence, Plaintiff has plausibly alleged that Defendants' lacked arguable probable cause to prosecute him. For these same reasons, Plaintiff has sufficiently pled the probable-cause element of his malicious prosecution § 1983 claim.

## 2. Malice Element

Defendants argue that Plaintiff's "vague accusations of 'malice' and 'falsification' of evidence are mere conclusions, not factual allegations." (Defs.' Br., Doc. 9 at 20.) The Court disagrees.

The malice element of malicious prosecution "consists in personal spite or in a general disregard of the right consideration of mankind, directed by chance against the individual injured." Fleming v. U-Haul Co. of Georgia, 541 S.E.2d 75, 78-79 (2000). Malice may be inferred if: (1)

---

Court focuses on the video only as a stark example of the difficulty of evaluating probable cause at this stage of the case.

defendant's acts were wanton; (2) were done with a reckless disregard for or conscious indifference to the rights of the plaintiff; or (3) from the want of probable cause. _Id._

Plaintiff has plausibly alleged that Powell falsified the existence of a tip call linking Plaintiff's truck to the truck described by the victim. (Am. Compl. ¶ 111, Ex. C at 1, Ex. F.) There is also a plausible allegation that, when confronted by Nalley, Powell lied to him about the existence of this first tip. (_Id._) Plaintiff also plausibly alleged that, without any evidence connecting Plaintiff to the incident, Powell contacted Lucas and asked her to search for Plaintiff's photograph on the internet to see whether he matched her description. (_Id._, Ex. C at 11.) Defendants Jones and Wheatley, at a minimum, were aware of Lucas having seen Plaintiff's photo without any other evidence tying Plaintiff to the allegation. So, when Defendants claim that "Plaintiff provides no allegations plausible showing that Jones or any other DPS officer acted maliciously or falsified evidence to secure his arrest," they sell Plaintiff's allegations well short. The Court finds that Plaintiff's allegations, if proved, would satisfy this element.

### 3. **Malicious Prosecution Claims Against Wheatley and Powell**

Plaintiff does not sufficiently allege that Defendants Powell and Wheatley violated Plaintiff's constitutional rights by malicious prosecution. Although Powell and Wheatley

contributed to the early stages of GDPS's investigation, and Powell, in particular, is alleged to have committed severe policing errors, they were not involved in the decision to apply for an arrest warrant, did not execute that warrant, and, based on the Court's review of the Complaint and attached exhibits, did not participate in Investigator Nalley's subsequent investigation or the decision to detain Plaintiff. Accordingly, there is no allegation that Wheatley or Powell violated Plaintiff's Fourth Amendment rights by either arresting him on February 17th or by continuing to detain him. The Court, therefore, **DISMISSES** Plaintiff's § 1983 claims against Defendants Wheatley and Powell.

### 4. Claims Against Grovetown and Jones

"The law is clear that a municipality cannot be held liable for the actions of its employees under § 1983 based on a theory of respondeat superior." Griffin v. City of Opa-Locka, 261 F.3d 1295, 1307 (11th Cir. 2001). "[T]o impose § 1983 liability on a municipality, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004). "A plaintiff . . . has two methods by which to establish a county's policy: identify either (1) an officially promulgated county policy or (2) an unofficial custom or

practice of the county shown through the repeated acts of a final policymaker for the county." Grech v. Clayton Cty., Ga., 335 F.3d 1326, 1329 (11th Cir. 2003).

Plaintiff alleges that Defendants' actions were directed by Defendant Jones, who, at the time, was chief of the GDPS. (Am. Compl. ¶ 148.) Defendants argue that this allegation of "a single incident of unconstitutional activity is not sufficient to impose liability against a municipality." (Defs.' Br., Doc. 9 at 10. (citing Craig v. Floyd Cty., Ga., 643 F.3d 1306, 1310 (11th Cir. 2011)). Notably, however, this single-incident rule applies where plaintiffs attempt to establish official policy by demonstrating a custom or practice. Craig, 643 F.3d at 1311 ("A single incident of a constitutional violation is insufficient to prove a policy or custom even when the incident involves several employees of the municipality."). The law is clear that "[a] municipality may be held liable for a single act or decision of a municipal official with final policymaking authority in the area of the act or decision." McMillian v. Johnson, 88 F.3d 1573, 1577 (11th Cir. 1996), aff'd sub nom. McMillian v. Monroe Cty., Ala., 520 U.S. 781, 117 S. Ct. 1734, 138 L. Ed. 2d 1 (1997) (citing Jett v. Dallas Independent School District, 491 U.S. 701, 737(1989); City of St. Louis v. Praprotnik, 485 U.S. 112, 123 (1988) (plurality opinion); Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986)).

At the motion to dismiss stage, Plaintiff has sufficiently alleged that Jones constituted the final policymaker for the subject-matter of Plaintiff's Complaint. The only question is whether Plaintiff sufficiently alleged that Jones directed his subordinate officers' conduct. Plaintiff's allegations demonstrate Jones' close involvement with the investigation. Shortly after Lucas's complaint was received, Jones was apprised of the complaint's facts and posted an incident report on Facebook asking for tips. (Am. Compl. ¶ 21.) Later, Jones contacted the Columbia County Sheriff's Department to arrange the photo lineup identification. (Id. ¶¶ 34-49.) The Complaint and attached exhibits also allege that Nalley was instructed to apply for the arrest warrant, and that Nalley kept Jones apprised of the developments in his investigation. (Compl. Ex. B at 7, Ex. C at 11, Ex. F.) Jones also was aware of the exculpatory evidence that Plaintiff's counsel provided to the GDPS. Construing all reasonable inferences in the light most favorable to Plaintiff, see Hoffman, 312 F.3d 1222, 1225, the Complaint plausibly alleges that Jones directed the investigation of Plaintiff. Accordingly, at this stage of the litigation, the Court **DENIES** Defendants' motion to dismiss Plaintiff's § 1983 count against Grovetown.

With respect to Jones' individual immunity, Defendants argued that Jones also possessed "arguable probable cause." (Defs.' Br., Doc. 9 at 21.) For the reasons explained above,

Plaintiff's allegations are sufficient to establish Jones' liability individually.

**B. Plaintiff's Unlawful Search Claim**

Plaintiff also alleges that Defendants violated Plaintiff's Fourth Amendment right against searches and seizures without probable cause. "Where [an] alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner . . . ." _Messerschmidt v. Millender_, 132 S.Ct. 1235, 1245 (2012). However, the fact that a neutral magistrate issued the warrant "does not end the inquiry into objective reasonableness." Id. Rather, the Supreme Court has "recognized an exception allowing suit when it is obvious that no reasonably competent officer would have concluded that a warrant should issue." Id. "Probable cause to support a search warrant exists when the totality of the circumstances allows a conclusion that there is a fair probability of finding contraband or evidence at a particular location." _United States v. Brundidge_, 170 F.3d 1350, 1352 (11th Cir. 1999) (per curiam).

For the reasons explained above, Plaintiff sufficiently alleged that there was no arguable probable cause at the time Nalley executed the search warrant on February 24, 2015. However, Plaintiff did not allege that Powell and Wheatley had any connection with the decision to obtain or execute the

warrant. Accordingly, the Court **DENIES** Defendants' motion to dismiss this claim with respect to Defendants Nalley, Grovetown, and Jones and **DISMISSES** this claim with respect to Defendants Powell and Wheatley.

## C. Alleged Due-Process Violation

To the extent Plaintiff asserts a due-process violation for being subject to a suggestive lineup, that claim fails. Plaintiff bases his argument on Geter v. Fortenberry, 849 F.2d 1550, 1559 (5th Cir. 1988). In Geter, an arrestee was convicted and received a life sentence, but the charges were dropped while on appeal after several witnesses identified another individual as the offender. Id. at 1552. Geter brought § 1983 claims against numerous municipalities and officers alleging that the defendants procured false evidence and admitted that evidence at trial. Id. The Fifth Circuit, relying on Manson v. Brathwaite, 432 U.S. 98, 97 (1977), and Brady v. Maryland, 373 U.S. 83 (1963), concluded that "a police officer cannot avail himself of a qualified immunity defense if he procures false identification by unlawful means or deliberately conceals exculpatory evidence, for such activity violates clearly established constitutional principles." Geter v. Fortenberry, 849 F.2d 1550, 1559 (5th Cir. 1988) (Geter I). However, the Fifth Circuit found the plaintiff's allegations conclusory. Id. at 1560. After remanding to allow for limited discovery, id. at 1560-61, the case returned on appeal and the Fifth Circuit held that

Plaintiff sufficiently alleged a violation of clearly established law. Geter v. Fortenberry, 882 F.2d 167, 171 (5th Cir. 1989). The Fifth Circuit has, however, narrowed Geter's reach to cases that proceed to trial and where the evidence is used against the defendants. See Hernandez v. Terrones, 397 F. App'x 954, 970 (5th Cir. 2010) (distinguishing Geter as only applying where introduction of the tainted evidence at trial violated their due-process rights). Other circuits have, however, concluded that no free-standing constitutional right against suggestive lineups exists, at least so long as the evidence from the identification is not used at trial. Hensley v. Carey, 818 F.2d 646, 650 (7th Cir. 1987).

For the reasons above, the Court concludes that no due-process right against suggestive identifications exists, at least where that evidence is not used against the criminal defendant at trial. Plaintiff therefore cannot state a § 1983 claim based on allegations that the suggestive lineup violated his due-process rights.

### D. Plaintiff's State-Law Claims

Plaintiff alleges four state law claims: (1) negligence; (2) false/malicious arrest; (3) false imprisonment; and (4) malicious prosecution. (Am. Compl. ¶¶ 153-185.) Before addressing whether Defendants' immunity defenses apply, the Court analyzes Plaintiff's claims for false/malicious arrest, false imprisonment, and malicious prosecution. Georgia law

distinguishes between false or malicious arrest and malicious prosecution. See generally Ferrell v. Mikula, 672 S.E.2d 7, 11-13 (Ga. Ct. App. 2008). The former is detention under process of law under O.C.G.A. § 51-7-7 and the latter is detention with judicial process followed by prosecution under O.C.G.A. § 51-7-40. Id. "The distinction is important because '[m]alicious prosecution and malicious arrest are mutually exclusive; if one right of action exists, the other does not.'" Stephens v. Zimmerman, 774 S.E.2d 811, 815 (Ga. Ct. App. 2015) (quoting Perry v. Brooks, 332 S.E.2d 375, 377 (Ga. Ct. App. 1985)). "Where, as here, there has been an arrest pursuant to a warrant, the remedy depends on whether the accused was prosecuted." Id. "If after the arrest[,] the warrant is dismissed or not followed up, the remedy is for malicious arrest. But if the action is carried on to a prosecution, an action for malicious prosecution is the exclusive remedy, and an action for malicious arrest will not lie." McCord v. Jones, 311 S.E.2d 209, 210 (Ga. Ct. App. 1983). The same is true of a claim for false imprisonment. Stephens, 774 S.E.2d at 815 (2015).

Here, Plaintiff was arrested pursuant to a warrant issued by the Magistrate Court of Columbia County, Georgia. At a preliminary hearing on March 31, 2015 before the Columbia County Magistrate Court, the charges were dismissed. An inquiry before a "committing court" is a required element of a malicious prosecution claim. O.C.G.A. § 51-7-42; see Renton v. Watson, 739

S.E.2d 19, 23-24 (2013). As the Magistrate Court is a committing court, Plaintiff's only claim is for malicious prosecution. The Court, therefore, **DISMISSES** Counts four and five of Plaintiff's Complaint. (Am. Compl. ¶¶ 161-72.) Below, the Court addresses Defendants' arguments concerning Plaintiff's remaining claims for malicious prosecution and negligence.

### 1. Official Immunity for the Individual Defendants

Plaintiff's remaining state-law claims are for malicious prosecution and negligence. In their motion to dismiss, Defendants contend that Plaintiff failed to allege facts that are sufficient to overcome the individual Defendants' official immunity. Specifically, Defendants argue that Plaintiff fails to allege facts showing that they acted with "actual malice."

Plaintiff offers two responses. Plaintiff argues that the acts in question were ministerial and, therefore, the actual-malice standard does not apply. Plaintiff also contends that the alleged acts, if proven, would satisfy the actual-malice standard that applies to strip immunity for discretionary acts.

The Court begins with the threshold question of whether the alleged acts were ministerial or discretionary. Under Georgia law, the answer is clear: Defendants' investigation of Lucas's complaint, including the suggestive photo identification, was discretionary conduct. See, e.g., Marshall v. Browning, 712 S.E.2d 71, 74 (Ga. Ct. App. 2008) (concluding that a police detective investigating a case, obtaining search and arrest

warrants, and executing those warrants was acting within her discretionary authority).

Given that the acts were discretionary, to overcome official immunity, Plaintiff must allege that Defendants performed these acts "with malice or an intent to injure." Marshall, 712 S.E.2d at 74 (quotation omitted). Here, Plaintiff alleges that Defendants acted with actual malice. Accordingly, the Court's "initial inquiry . . . is not whether [Defendants] acted maliciously for purposes of the tort of malicious prosecution, but whether [they] acted with actual malice that would exempt [them] from official immunity." Stephens, 774 S.E.2d at 815-16.

> In the context of official immunity, actual malice requires a deliberate intention to do wrong and denotes express malice or malice in fact. Actual malice does not include implied malice, or the reckless disregard for the rights and safety of others. A deliberate intention to do wrong such as to constitute the actual malice necessary to overcome official immunity must be the intent to cause the harm suffered by the plaintiffs. Likewise, the phrase actual intent to cause injury has been defined in a tort context to mean an actual intent to cause harm to the plaintiff, not merely an intent to do the act purportedly resulting in the claimed injury. This definition of intent contains aspects of malice, perhaps a wicked or evil motive.

Selvy v. Morrison, 665 S.E.2d 401, 404-05 (Ga. Ct. App. 2008) (footnotes, quotations, and alterations omitted). "[A]

plaintiff in Georgia can show actual malice by presenting evidence of personal animus toward the arrestee, manufactured evidence, or knowing presentation of perjured testimony." Taylor v. Taylor, No. 3:13-cv-69, 2015 WL 4601166 (S.D. Ga. July 29, 2015) (citing Marshall, 712 S.E.2d at 74)).

The Court finds that Plaintiff's allegations, if proven, would not establish that Defendants acted with actual malice. Plaintiff does not allege, for instance, that Defendants framed Plaintiff for attempted child molestation by, for example, planting evidence on him. At most, Plaintiff alleges that Defendant Powell lied about receiving a tip matching Plaintiff's truck to the truck Lucas described in her incident report. There is no allegation, however, that Powell lied with the intent to injure Plaintiff.[4] Construing all inferences in Plaintiff's favor, the Complaint alleges that Defendants conducted a faulty investigation and arrested Plaintiff without actual probable cause or even arguable probable cause. But there is no allegation that Defendants arrested Plaintiff in order to injure Plaintiff; rather, the Complaint itself gives five motives for Defendants' conduct, none of which amount to an

---

[4] The Complaint does allege that "Defendants acted deliberately and maliciously with the intent to injure Plaintiff." (Am. Compl. ¶ 93.) This is a textbook example of a "formulaic recitation of a cause of action's elements," which the Supreme Court has found "will not do." Twombly, 550 U.S. at 555.

intent to injure Plaintiff. (Am. Compl. ¶ 125.)[5] Officers who recklessly conduct investigations in an effort to quickly close cases may be subject to criticism, but they do not act with the actual malice necessary to strip them of official immunity. The Court, therefore, finds that official immunity bars Plaintiff's state-law claims for malicious prosecution and negligence against Defendants Jones, Powell, Wheatley, and Nalley.

### 2. Municipal Immunity

Defendants contend that Grovetown is entitled to sovereign immunity and all state claims against it should therefore be dismissed. The Georgia Constitution provides that "sovereign immunity extends to the state and all of its departments and agencies" unless specifically waived by statute. Ga. Const. art. 1, § 2, ¶ 9(a), (e). With regard to municipalities, "there is no waiver of the sovereign immunity of municipal corporations of the state and such municipal corporations [are] immune from

---

[5] Those reasons are as follows:
1. "The desire to close the case quickly without exerting much effort or resources";
2. "[T]heir collective dislike of [P]laintiff due to his history";
3. Defendant Jones's political aspirations and desire "to be seen as tough on crime";
4. Defendant Jones's desire "to further his standing and authority relative to other city officials"; and
5. Defendant Jones's desire to increase the public's opinion of him.

(Am. Compl. ¶ 125.)

liability for damages." O.C.G.A. § 36-33-1(a). "Municipal corporations shall not be liable for failure to perform or for errors in performing their legislative or judicial powers. For neglect to perform or improper or unskillful performance of their ministerial duties, they shall be liable." O.C.G.A. § 36-33-1(b). "In this regard, it is well established that city police officers engaged in city police work are performing a governmental function to which [the above mentioned] waiver of a city's sovereign immunity does not apply." Weaver v. City of Statesboro, 653 S.E.2d 765, 768 (2007); see also O.C.G.A. § 36-33-3 ("A municipal corporation shall not be liable for the torts of policemen or other officers engaged in the discharge of the duties imposed on them by law."); McDay v. City of Atlanta, 420 S.E.2d 75, 77 (Ga. Ct. App. 1992) ("The city is not vicariously liable for the acts attributed to the police officers."). However, "[a] city can waive its sovereign immunity by purchasing liability insurance if the 'policy of insurance issued covers an occurrence for which the defense of sovereign immunity is available, and then only to the extent of the limits of such insurance policy.'" Gray v. Ector, 541 F. App'x 920, 926 (11th Cir. 2013) (quoting O.C.G.A. § 36-33-1(a)). "The party seeking to benefit from the waiver of sovereign immunity has the burden of proof to establish waiver . . . ." Murray v. Ga. Dept. of Transp., 644 S.E.2d 290, 293 (Ga. Ct. App. 2007).

Plaintiff alleges that Grovetown possesses liability insurance that would cover this claim and therefore has waived its governmental immunity pursuant to O.C.G.A. § 36-33-1(a). (Compl. ¶ 10.) The interaction between the governmental immunity granted by O.C.G.A. § 36-33-3 and the waiver of immunity in O.C.G.A. § 36-33-1(a) has been subject to surprisingly little litigation. In one similar case, the Eleventh Circuit found, without citing § 36-33-3, that whether the defendant city waived its liability for a false arrest conducted by city police officers where the city procured liability insurance and filed a claim for coverage of the false arrest constituted a disputed question of material fact. Gray, 541 F. App'x at 926; see also Charles R. Adams III, Ga. Law of Torts § 21:9 (2015) ("In the absence of liability insurance, a municipality cannot be held liable for the torts of policemen or other officers engaged in the discharge of duties imposed by upon them by law."). In the context of municipal liability for automobile accidents involving city police officers, Georgia courts have found that the grant of immunity in § 36-33-3 is subject to the waiver provision in § 33-24-51(b). Ekarika v. City of E. Point, 420 S.E.2d 391, 392 (Ga. Ct. App. 1992); City of Thomaston v. Bridges, 439 S.E.2d 906, 909 n.7 (Ga. 1994).

The Court concludes that the immunities granted by §§ 36-33-1 and 36-33-3 are subject to the liability-insurance-waiver provision in § 36-33-1(a). Based on Plaintiff's allegation that

29

Grovetown possesses liability insurance that would cover Defendants' conduct, the Court finds that Plaintiff sufficiently alleged that Grovetown is not immune from suit.

### 3. Failure to State a Claim

Defendants also argue that the state-law malicious-prosecution claim fails because Defendants' possessed probable cause to arrest Plaintiff. Defendants' argument mirrors its argument on the § 1983 claim, except without the gloss of qualified immunity's arguable-probable-cause standard. As the Court explained above, Plaintiff's allegations, if true, establish that Defendants' lacked probable cause to arrest Plaintiff. The Court, therefore, **DENIES** Defendants' motion to dismiss the state-law malicious-prosecution claim asserted against the city.

The Court now turns to Plaintiff's negligence count. This count is slightly different than those discussed above. Plaintiff alleges that "Defendants owed plaintiff a ministerial duty to conduct a line-up identification without previously divulging plaintiff's photograph to the witness." (Compl. ¶ 155.) Plaintiff alleges that Defendants breached that alleged duty and the standard of care by instructing Lucas to view Plaintiff's photograph in advance of the photo lineup. (See id. ¶¶ 156-57.) Plaintiff alleges that this breach was the actual and proximate cause of his damages. (Id. ¶ 160.)

Besides arguing the immunities discussed above, Defendants did not address whether Plaintiff's negligence count should be dismissed. For the reasons discussed above, the City is not protected by immunity. The Court, therefore, **DENIES** Defendants' motion to dismiss the negligence count asserted against the city.

## IV.    CONCLUSION

For the reasons explained above, Defendants' motion to dismiss (Doc. 9) is **GRANTED IN PART** and **DENIED IN PART**. The Court **DISMISSES** Plaintiff's § 1983 claims against Defendants Powell and Wheatley and Plaintiff's state-law claims against Defendants Jones, Powell, Wheatley, and Nalley. The Court also **DISMISSES** Plaintiff's state-law claims against Grovetown for false/malicious arrest and false imprisonment. Plaintiff's § 1983 claims against Grovetown, Jones, and Nalley will proceed, as will Plaintiff's state-law claims for malicious prosecution and negligence against Grovetown.

**ORDER ENTERED** at Augusta, Georgia, this 2nd day of September, 2016.

HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA